CINDY COHN (SBN 145997)
cindy@eff.org
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
MATTHEW ZIMMERMAN (SBN 212423)
MARK RUMOLD (SBN 279060)
DAVID GREENE (SBN 160107)
JAMES S. TYRE (SBN 083117)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333; Fax: (415) 436-9993

THOMAS E. MOORE III (SBN 115107)
tmoore@moorelawteam.com
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, CA 94303
Tel.: 650-813-9700; Fax: 650-813-9777

Attorneys for Plaintiffs

RACHAEL E. MENY (SBN 178514)
rmeny@kvn.com
MICHAEL S. KWUN (SBN 198945)
BENJAMIN W. BERKOWITZ (SBN 244441)
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, California 94111
Tel.: (415) 391-5400; Fax: (415) 397-7188

RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Tel.: (415) 433-3200; Fax: (415) 433-6382

ARAM ANTARAMIAN (SBN 239070)
aram@eff.org
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 289-1626

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRST UNITARIAN CHURCH OF LOS ANGELES; ACORN ACTIVE MEDIA; BILL OF RIGHTS DEFENSE COMMITTEE; CALGUNS FOUNDATION, INC.; CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, INC.; CHARITY AND SECURITY NETWORK; COUNCIL ON AMERICAN ISLAMIC RELATIONS-CALIFORNIA; COUNCIL ON AMERICAN ISLAMIC RELATIONS-OHIO; COUNCIL ON AMERICAN ISLAMIC RELATIONS-FOUNDATION, INC.; FRANKLIN ARMORY; FREE PRESS; FREE SOFTWARE FOUNDATION; GREENPEACE, INC.; HUMAN RIGHTS WATCH; MEDIA ALLIANCE; NATIONAL LAWYERS GUILD; NATIONAL ORGANIZATION FOR THE REFORM OF MARIJUANA LAWS, CALIFORNIA CHAPTER; PATIENT PRIVACY RIGHTS; PEOPLE FOR THE AMERICAN WAY; PUBLIC KNOWLEDGE; SHALOM CENTER; STUDENTS FOR SENSIBLE DRUG POLICY; TECHFREEDOM; and UNITARIAN UNIVERSALIST SERVICE COMMITTEE, <br><br> Plaintiffs, | Case No: 3:13-cv-03287 JSW <br><br> **FIRST AMENDED COMPLAINT FOR CONSTITUTIONAL AND STATUTORY VIOLATIONS, SEEKING DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Hon. Jeffrey S. White <br> Courtroom 11 - 19th Floor <br><br><br> **DEMAND FOR JURY TRIAL** |

1      v.                                  )

NATIONAL SECURITY AGENCY and KEITH )
B. ALEXANDER, its Director, in his official and )
individual capacities; the UNITED STATES OF )
AMERICA; DEPARTMENT OF JUSTICE and )
ERIC H. HOLDER, its Attorney General, in his )
official and individual capacities; Acting Assistant )
Attorney General for National Security JOHN P. )
CARLIN, in his official and individual capacities; )
FEDERAL BUREAU OF INVESTIGATION and )
JAMES B. COMEY, its Director, in his official )
and individual capacities; ROBERT S. )
MUELLER, former Director of the FEDERAL )
BUREAU OF INVESTIGATION, in his individual)
capacity; JAMES R. CLAPPER, Director of )
National Intelligence, in his official and individual )
capacities, and DOES 1-100, )
                                  )
               Defendants.      )
_____)

1    1.    Plaintiffs bring this action on behalf of themselves and, where indicated, on behalf of

2    their members and staff. Plaintiffs allege as follows:

3    <u>**PRELIMINARY STATEMENT**</u>

4    2.    Plaintiffs, as described more particularly below, are associations, as well as the

5    members and staffs of associations, who use the telephone to engage in private communications

6    supportive of their associations and activities, including engaging in speech, assembly, petition for

7    the redress of grievances, and the exercise of religion.

8    3.    This lawsuit challenges an illegal and unconstitutional program of dragnet electronic

9    surveillance, specifically the bulk acquisition, seizure, collection, storage, retention, and searching of

10   telephone communications information (the "Associational Tracking Program") conducted by the

11   National Security Agency (NSA) and the other defendants (collectively, "Defendants").

12   4.    The Associational Tracking Program is vast. It collects telephone communications

13   information for all telephone calls transiting the networks of all major American telecommunication

14   companies, including Verizon, AT&T, and Sprint, ostensibly under the authority of section 215 of

15   the USA PATRIOT Act, codified at 50 U.S.C. § 1861.

16   5.    The communications information that Defendants collect in the Associational

17   Tracking Program is retained and stored by Defendants in one or more databases. The Program

18   collects information concerning all calls wholly within the United States, including local telephone

19   calls, as well as all calls between the United States and abroad, regardless of a connection to

20   international terrorism, reasonable suspicion of criminality, or any other form of wrongdoing. This

21   information is stored for at least five years. Defendants have indiscriminately obtained, and stored

22   the telephone communications information of millions of ordinary Americans as part of the

23   Associational Tracking Program.

24   6.    Defendants search and analyze the Associational Tracking Program's database(s) for

25   various purposes, including but not limited to, obtaining the communications history of particular

26   phone numbers, which, when aggregated, reveals those numbers' contacts and associations over

27   time.

28
FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

7. Defendants' collection of telephone communications information includes, but is not limited to, records indicating who each customer communicates with, at what time, for how long and with what frequency communications occur. This communications information discloses the expressive and private associational connections among individuals and groups, including Plaintiffs and their members and staff.

8. The Associational Tracking Program has been going on in various forms since October 2001.

9. The bulk collection of telephone communications information without a valid, particularized warrant supported by probable cause violates the First, Fourth, and Fifth Amendments, as well as statutory prohibitions and limitations on electronic surveillance.

10. Defendants' searches of the Associational Tracking Program database(s) without a valid, particularized warrant supported by probable cause violate the First, Fourth, and Fifth Amendments.

11. Plaintiffs' records are searched even if they are not targets of the search.

12. Plaintiffs are organizations, associations, and advocacy groups, their staffs, and their members who are current subscribers to Verizon and other telephone services. Using the Associational Tracking Program, Defendants seize, collect, acquire, retain, and search the records of the telephone communications of Plaintiffs, their members and staff, and others seeking to associate and communicate with them.

## JURISDICTION AND VENUE

13. This court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, and the Constitution.

14. Plaintiffs are informed, believe, and thereon allege that Defendants have sufficient contacts with this district generally and, in particular, with the events herein alleged, that Defendants are subject to the exercise of jurisdiction of this court over the person of such Defendants and that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

15. Plaintiffs are informed, believe, and thereon allege that a substantial part of the events

FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

giving rise to the claims herein alleged occurred in this district and that Defendants and/or agents of Defendants may be found in this district.

16. **Intradistrict Assignment:** Assignment to the San Francisco/Oakland division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this district and division.

## PARTIES

17. Plaintiff First Unitarian Church of Los Angeles (First Unitarian) was founded in 1877 by Caroline Seymour Severance, a woman who worked all her life for causes such as the abolition of slavery and women's suffrage. First Unitarian is located in Los Angeles, California. Throughout its history members of First Unitarian defined their religious goals in terms of justice, equality, and liberty for all persons. During the middle decades of the 20th century, First Unitarian provided aid to Japanese-Americans displaced by internment camps, defended free speech against anti-communist hysteria, and protested nuclear proliferation. In the 1980s, First Unitarian provided sanctuary to Central American refugees and, in recent decades, First Unitarian opened its building as a community center for the economically-depressed and ethnically-diverse neighborhood of MacArthur Park. Members of First Unitarian have been quick to engage in difficult work and controversial ideas and are proud of their contribution to moving the world closer to justice for all. First Unitarian brings this action on behalf of itself and its adversely affected members and staff.

18. Plaintiff Acorn Active Media is an outlet for technically skilled members to build technical resources for groups, non-profits, and individuals who otherwise do not have the capacity or would not be able to afford these services. Since Acorn's inception in January 2004, it has engaged in website design, web application development, general technical consulting and hardware support, and organizational database development for a diverse array of groups, individuals, and organizations from around the globe. Acorn members have supported democracy advocates and independent media outlets worldwide, often working directly with communities laboring under hostile and oppressive regimes. Plaintiff Acorn brings this action on behalf of itself and its adversely affected volunteers and members.

FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

19.     Plaintiff Bill of Rights Defense Committee (BORDC) is a non-profit, advocacy organization based in Northhampton, Massachusetts. BORDC supports an ideologically, politically, ethnically, geographically, and generationally diverse grassroots movement focused on educating Americans about the erosion of fundamental freedoms; increasing civic participation; and converting concern and outrage into political action. BORDC brings this action on behalf of itself and its adversely affected staff.

20.     Plaintiff Calguns Foundation, Inc. (CGF) is a non-profit, membership organization based in San Carlos, California. CGF works to support the California firearms community by promoting education for all stakeholders about California and federal firearm laws, rights, and privileges, and defending and protecting the civil rights of California gun owners. In particular, CGF operates a hotline for those with legal questions about gun rights in California. Plaintiff CGF brings this action on behalf of itself and on behalf of its adversely affected members and staff.

21.     Plaintiff California Association of Federal Firearms Licensees, Inc. (CAL-FFL) is a non-profit, industry association of, by, and for firearms manufacturers, dealers, collectors, training professionals, shooting ranges, and others, advancing the interests of its members and the general public through strategic litigation, legislative efforts, and education. CAL-FFL expends financial and other resources in both litigation and non-litigation projects to protect the interests of its members and the public at large. CAL-FFL brings this action on behalf of itself and its adversely affected members and staff.

22.     Plaintiff Charity and Security Network's mission is to protect civil society's ability to carry out peacebuilding projects, humanitarian aid, and development work effectively and in a manner consistent with human rights principles and democratic values.  To accomplish this, the Network focuses on: coordinating advocacy by bringing together stakeholders from across the nonprofit sector with policymakers to support needed changes in U.S. national security rules; and raising awareness, dispelling myths and promoting awareness of the positive contribution civil society makes to human security. CSN brings this action on behalf of itself and its adversely affected membership and staff.

23. Plaintiffs Council on American Islamic Relations – California (CAIR-CA), Council on American Islamic Relations-Ohio (CAIR-OHIO), and Council on American Islamic Relations-Foundation, Inc. (CAIR-F) are non-profit, advocacy organization with offices in California, Ohio, and Washington, D.C., respectively. CAIR-CA, CAIR-OHIO, and CAIR-F's missions are to enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims, and build coalitions that promote justice and mutual understanding. CAIR-CA, CAIR-OHIO, and CAIR-F bring this action on behalf of themselves and their adversely affected staffs.

24. Plaintiff Franklin Armory, a wholly owned subsidiary of CBE, Inc., is a state and federally licensed manufacturer of firearms located in Morgan Hill, California. Franklin Armory specializes in engineering and building products for restrictive firearms markets, such as California. Franklin Armory is a member of CAL-FFL. Franklin Armory brings this suit on its own behalf.

25. Plaintiff Free Press is a non-profit, advocacy organization based in Washington, D.C. Free Press's mission is to build a nationwide movement to change media and technology policies, promote the public interest, and strengthen democracy by advocating for universal and affordable Internet access, diverse media ownership, vibrant public media, and quality journalism. Free Press brings this action on behalf of itself and its adversely affected members and staff.

26. Plaintiff the Free Software Foundation (FSF) is a non-profit, membership organization based in Boston, Massachusetts. FSF helped pioneer a worldwide free software movement and provides an umbrella of legal and technical infrastructure for collaborative software development internationally. FSF brings this action on behalf of itself and its adversely affected members and staff.

27. Plaintiff Greenpeace, Inc. (Greenpeace) is a non-profit, membership organization headquartered in Washington, D.C. Through a domestic and international network of offices and staff, Greenpeace uses research, advocacy, public education, lobbying, and litigation to expose global environmental problems and to promote solutions that are essential to a green and peaceful future. Greenpeace brings this action on behalf of itself and its adversely affected members and staff.

28. Plaintiff Human Rights Watch (HRW) is a non-profit, advocacy organization, based in

New York, New York. Through its domestic and international network of offices and staff, HRW challenges governments and those in power to end abusive practices and respect international human rights law by enlisting the public and the international community to support the cause of human rights for all. HRW brings this action on behalf of itself and its adversely affected staff.

29.     Plaintiff Media Alliance is a non-profit, membership organization based in Oakland, California. Media Alliance serves as a resource and advocacy center for media workers, non-profit organizations, and social justice activists to make media accessible, accountable, decentralized, representative of society's diversity, and free from covert or overt government control and corporate dominance. Media Alliance brings this action on behalf of itself and its adversely affected members and staff.

30.     Plaintiff National Lawyers Guild, Inc. is a non-profit corporation formed in 1937 as the nation's first racially integrated voluntary bar association. For over seven decades the Guild has represented thousands of Americans critical of government policies, from antiwar, environmental and animal rights activists, to Occupy Wall Street protesters, to individuals accused of computer-related offenses. From 1940-1975 the FBI conducted a campaign of surveillance, investigation and disruption against the Guild and its members, trying unsuccessfully to label it a subversive organization. The NLG brings this action on behalf of itself and its adversely affected membership and staff.

31.     Plaintiff National Organization for the Reform of Marijuana Laws, California Chapter (NORML, California Chapter) is a non-profit, membership organization located in Berkeley, California. NORML, California Chapter is dedicated to reforming California's marijuana laws and its mission is to establish the right of adults to use cannabis legally. NORML, California Chapter brings this action on behalf of itself and its adversely affected members and staff.

32.     Plaintiff Patient Privacy Rights (PPR) is a bipartisan, non-profit organization with 12,000 members in all 50 states. It works to give patients control over their own sensitive health information in electronic systems, with the goal of empowering privacy and choices that protect jobs and opportunities and ensure trust in the patient-physician relationship. The lack of privacy of health

information causes millions of individuals every year to refuse or delay needed medical treatment or hide information, putting their health at risk. PPR brings this action on behalf of itself and its adversely affected members and volunteers.

33. Plaintiff People for the American Way (PFAW) is a non-profit, membership organization based in Washington, D.C. With over 595,000 members, PFAW's primary function is the education of its members, supporters, and the general public as to important issues that impact fundamental civil and constitutional rights and freedoms, including issues concerning civil liberties, government secrecy, improper government censorship, and First Amendment freedoms. PFAW brings this action on behalf of itself and its adversely affected members and staff.

34. Plaintiff Public Knowledge is a non-profit, advocacy organization based in Washington, D.C. Public Knowledge is dedicated to preserving the openness of the Internet and the public's access to knowledge, promoting creativity through the balanced application of copyright laws, and upholding and protecting the rights of consumers to use innovative technology lawfully. Public Knowledge brings this action on behalf of itself and its adversely affected staff.

35. Plaintiff the Shalom Center seeks to be a prophetic voice in Jewish, multireligious, and American life. It connects the experience and wisdom of the generations forged in the social, political, and spiritual upheavals of the last half-century with the emerging generation of activists, addressing with special concern the planetary climate crisis and the power configurations behind that crisis. The Shalom Center brings this action on behalf of itself and its adversely affected membership and staff.

36. Plaintiff Students for Sensible Drug Policy (SSDP) is a non-profit, membership organization based in Washington, D.C. With over 3,000 members, SSDP is an international, grassroots network of students who are concerned about the impact drug abuse has on our communities, but who also know that the War on Drugs is failing our generation and our society. SSDP creates change by bringing young people together and creating safe spaces for students of all political and ideological stripes to have honest conversations about drugs and drug policy. SSDP brings this action on behalf of itself and its adversely affected membership and staff.

FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

37.    Plaintiff TechFreedom is a non-profit, think tank based in Washington, D.C. TechFreedom's mission is promoting technology that improves the human condition and expands individual capacity to choose by educating the public, policymakers, and thought leaders about the kinds of public policies that enable technology to flourish. TechFreedom seeks to advance public policy that makes experimentation, entrepreneurship, and investment possible, and thus unleashes the ultimate resource: human ingenuity. TechFreedom brings this action on behalf of itself and its adversely affected staff.

38.    Plaintiff Unitarian Universalist Service Committee (UUSC) is a non-profit, membership organization based in Cambridge, Massachusetts. UUSC advances human rights and social justice around the world, partnering with those who confront unjust power structures and mobilizing to challenge oppressive policies. Through a combination of advocacy, education, and partnerships with grassroots organizations, UUSC promotes economic rights, advances environmental justice, defends civil liberties, and preserves the rights of people in times of humanitarian crisis. UUSC brings this action on behalf of itself and its adversely affected members and staff.

39.    All Plaintiffs make and receive telephone calls originating within the United States in furtherance of their mission and operations. In particular, Plaintiffs make and receive telephone calls to and from their members, staffs, and constituents, among other groups and individuals seeking to associate with them, in furtherance of their mission and operations, including advancing their political beliefs, exchanging ideas, and formulating strategy and messages in support of their causes.

40.    Each of the Plaintiffs above is a membership organization and brings this action on behalf of its members has members whose communications information has been collected as part of the Associational Tracking Program.

41.    Defendant NSA is an agency under the direction and control of the Department of Defense that seizes, collects, processes, and disseminates signals intelligence. It is responsible for carrying out at least some of the Associational Tracking Program challenged herein.

42.    Defendant General Keith B. Alexander is the current Director of the NSA, in office

since April of 2005. As NSA Director, General Alexander has authority for supervising and implementing all operations and functions of the NSA, including the Associational Tracking Program. General Alexander personally authorizes and supervises the Associational Tracking Program.

43.    Defendant United States is the United States of America, its departments, agencies, and entities.

44.    Defendant Department of Justice is a Cabinet-level executive department in the United States government charged with law enforcement, defending the interests of the United States according to the law, and ensuring fair and impartial administration of justice for all Americans.

45.    Defendant Eric H. Holder is the current Attorney General of the United States, in office since February of 2009. Attorney General Holder personally approves, authorizes, supervises, and participates in the Associational Tracking Program on behalf of the Department of Justice.

46.    Defendant John B. Carlin is the current Acting Assistant Attorney General for National Security. In that position, defendant Carlin participates in the Department of Justice's implementation of the Associational Tracking Program.

47.    Defendant Federal Bureau of Investigation (FBI) is a component of the Department of Justice that conducts federal criminal investigation and collects domestic intelligence. FBI is responsible for carrying out at least some of the Associational Tracking Program activities challenged herein.

48.    Defendant James B. Comey is the current Director of the FBI, in office since September of 2013. As FBI Director, defendant Comey has ultimate authority for supervising and implementing all operations and functions of the FBI, including its participation in the Associational Tracking Program. Defendant Comey personally authorizes and supervises the FBI's participation in the Associational Tracking Program.

49.    Defendant Robert S. Mueller is the previous Director of the FBI, from September, 2001-September, 2013. As FBI Director, defendant Mueller had ultimate authority for supervising and implementing all operations and functions of the FBI, including its participation in the

Associational Tracking Program. Defendant Mueller personally authorized and supervised the FBI's participation in the Associational Tracking Program.

50.     Defendant Lieutenant General (Ret.) James R. Clapper is the Director of National Intelligence (DNI), in office since August of 2010. Defendant Clapper participates in the activities of the U.S. intelligence community, including the Associational Tracking Program.

51.     Defendants DOES 1-100 are persons or entities who have authorized or participated in the Associational Tracking Program. Plaintiffs will allege their true names and capacities when ascertained. Upon information and belief each is responsible in some manner for the occurrences herein alleged and the injuries to Plaintiffs herein alleged were proximately caused by the acts or omissions of DOES 1-100 as well as the named Defendants.

## FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

## STATUTORY BACKGROUND

52.     50 U.S.C § 1861, the codification of section 215 of the USA PATRIOT Act, as amended, is entitled "Access to certain business records for foreign intelligence and surveillance purposes." Section 1861 provides narrow and limited authority for the Foreign Intelligence Surveillance Court (FISC) to issue orders for the production of "any tangible things (including books, records, papers, documents, and other items) for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities." The limitations on section 1861 orders include the following:

- an order may be issued only upon "a statement of facts showing that there are reasonable grounds to believe that the tangible things sought are relevant to an authorized investigation;"

- the tangible things sought to be produced by an order must be described "with sufficient particularity to permit them to be fairly identified;" and

- an order "may only require the production of a tangible thing if such thing can be obtained with a *subpoena duces tecum* issued by a court of the United States in aid of

a grand jury investigation or with any other order issued by a court of the United States directing the production of records or tangible things."

### THE ASSOCIATIONAL TRACKING PROGRAM

53.     The Associational Tracking Program is electronic surveillance that collects and acquires telephone communications information for all telephone calls transiting the networks of all major American telecommunication companies, including Verizon, AT&T, and Sprint. Every day, the Associational Tracking Program collects information about millions of telephone calls made by millions of Americans. This includes information about all calls made wholly within the United States, including local telephone calls, as well as communications between the United States and abroad.

54.     Defendants' Associational Tracking Program collects and acquires call detail records and comprehensive communications routing information about telephone calls. The collected information includes, but is not limited to, session identifying information (*e.g.*, originating and terminating telephone number, International Mobile Subscriber Identity (IMSI) number, International Mobile station Equipment Identity (IMEI) number, etc.), trunk identifier, telephone calling card numbers, and time and duration of call. Defendants acquire this information through the use of a surveillance device.

55.     Beginning in 2001, participating phone companies voluntarily provided telephone communications information for the Associational Tracking program to Defendants. Since 2006, the FISC, at the request of Defendants, has issued orders under 50 U.S.C. § 1861 purporting to compel the production of communications information, including communications information not yet in existence, on an ongoing basis, as part of the Associational Tracking Program.

56.     As an example, attached hereto as Exhibit A, and incorporated herein by this reference, is an Order issued under 50 U.S.C. § 1861 requiring the production of communications information for use in the Associational Tracking Program.

57.     DNI Clapper has admitted the Order is authentic, as indicated in Exhibit B, attached hereto and incorporated by this reference.

58.     The Order is addressed to Verizon Business Network Services Inc., on behalf of MCI Communications Services Inc., d/b/a Verizon Business Services (individually and collectively "Verizon"). Verizon is one of the largest providers of telecommunications services in the United States with over 98 million subscribers. Through its subsidiaries and other affiliated entities that it owns, controls, or provides services to, Verizon provides telecommunications services to the public and to other entities. These subsidiaries and affiliated entities include Verizon Business Global, LLC; MCI Communications Corporation; Verizon Business Network Services, Inc.; MCI Communications Services, Inc.; and Verizon Wireless (Cellco Partnership).

## BULK SEIZURE COLLECTION, ACQUISITION, AND STORAGE

59.     The Associational Tracking Program seizes, collects and acquires telephone communications information for all telephone calls transiting the networks of all major American telecommunication companies, including Verizon, AT&T, and Sprint.

60.     The telephone communications information Defendants seize, collect and acquire in bulk as part of the Associational Tracking Program is retained and stored by Defendants in one or more databases. These databases contain call information for all, or the vast majority, of calls wholly within the United States, including local telephone calls, and calls between the United States and abroad, for a period of at least five years. Defendants have indiscriminately obtained and stored the telephone communications information of millions of ordinary Americans, including Plaintiffs, their members, and staffs, as part of the Associational Tracking Program.

61.     Defendants' bulk seizure, collection and acquisition of telephone communications information includes, but is not limited to, records indicating who each customer communicates with, at what time, and for how long. The aggregation of this information discloses the expressive, political, social, personal, private, and intimate associational connections among individuals and groups, which ordinarily would not be disclosed to the public or the government.

62.     Through the Associational Tracking Program, Defendants have seized, collected, acquired, and retained, and continue to seize, collect, acquire, and retain, bulk communications information of telephone calls made and received by Plaintiffs, their members, and their staffs. This

information is otherwise private.

63.    Because of the Associational Tracking Program, Plaintiffs have lost the ability to assure confidentiality in the fact of their communications to their members and constituent. Plaintiffs' associations and political advocacy efforts, as well as those of their members and staffs, are chilled by the fact that the Associational Tracking Program creates a permanent record of all of Plaintiffs' telephone communications with their members and constituents, among others.

64.    Plaintiffs' associations and political advocacy efforts, as well as those of their members and staffs, are chilled by Defendants' search and analysis of information obtained through the Associational Tracking Program and Defendants' use and disclose of this information and the results of their searches and analyses.

65.    Plaintiffs' telephone communications information obtained, retained, and searched pursuant to the Associational Tracking Program was at the time of acquisition, and at all times thereafter, neither relevant to an existing authorized criminal investigation nor to an existing authorized investigation to protect against international terrorism or clandestine intelligence activities.

66.    Defendants' bulk seizure, collection, acquisition, and retention of the telephone communications information of Plaintiffs, their members, and their staffs is done without lawful authorization, probable cause, and/or individualized suspicion. It is done in violation of statutory and constitutional limitations and in excess of statutory and constitutional authority. Any judicial, administrative, or executive authorization (including any order issued pursuant to the business records provision of 50 U.S.C. § 1861) of the Associational Tracking Program or of the acquisition and retention of the communications information of Plaintiffs, their members, and their staffs is unlawful and invalid.

67.    Defendants' bulk seizure, collection, acquisition, and retention of the telephone communications information of Plaintiffs, their members, and their staffs is done (a) without probable cause or reasonable suspicion to believe that Plaintiffs, their members, and their staffs have committed or are about to commit any crime or engage in any international terrorist activity; (b)

without probable cause or reasonable suspicion to believe that Plaintiffs, their members, or their staffs are foreign powers or agents of foreign powers; and (c) without probable cause or reasonable suspicion to believe that the communications of Plaintiffs, their members, and their staffs contain or pertain to foreign intelligence information, or relate to an investigation to obtain foreign intelligence information.

68. Defendants, and each of them, have authorized, approved, supervised, performed, caused, participated in, aided, abetted, counseled, commanded, induced, procured, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the Associational Tracking Program and in the seizure, collection, acquisition, and retention of the telephone communications information of Plaintiffs, their members, and their staffs. Defendants have committed these acts willfully, knowingly, and intentionally. Defendants continue to commit these acts and will continue to do so absent an order of this Court enjoining and restraining them from doing so.

### SEARCH

69. Through the Associational Tracking Program, Defendants have searched and continue to search communications information of telephone calls made and received by Plaintiffs, their members, and their staffs. Defendants use the communications information acquired for the Associational Tracking Program for a process known as "contact chaining" — the construction of an associational network graph that models the communication patterns of people, organizations, and their associates.

70. As part of the Associational Tracking Program, contact chains are created both in an automated fashion and based on particular queries. Contact chain analyses are typically performed for two degrees of separation (or two "hops") away from an intended target. That is, an associational network graph would be constructed not just for the target of a particular query, but for any number in direct contact with that target, and any number in contact with a direct contact of the target. Defendants sometimes conduct associational analyses up to three degrees of separation ("three hops") away.

71. The searches include Plaintiffs' communications information even if plaintiffs are not

targets of the government and even if they are not one, two or more "hops" away from a target. All telephone communications information is searched as part of the Associational Tracking Program.

72.     Plaintiffs' telephone communications information searched pursuant to the Associational Tracking Program was, at the time of search and at all times thereafter, was neither relevant to an existing authorized criminal investigation nor to an existing authorized investigation to protect against international terrorism or clandestine intelligence activities.

73.     Defendants' searching of the telephone communications information of Plaintiffs is done without lawful authorization, probable cause, and/or individualized suspicion. It is done in violation of statutory and constitutional limitations and in excess of statutory and constitutional authority. Any judicial, administrative, or executive authorization (including any business records order issued pursuant 50 U.S.C. § 1861) of the Associational Tracking Program or of the searching of the communications information of Plaintiffs is unlawful and invalid.

74.     Defendants' searching of the telephone communications information of Plaintiffs is done (a) without probable cause or reasonable suspicion to believe that Plaintiffs, their members, or their staffs, have committed or are about to commit any crime or engage in any international terrorist activity; (b) without probable cause or reasonable suspicion to believe that Plaintiffs, their members, or their staffs are foreign powers or agents of foreign powers; and (c) without probable cause or reasonable suspicion to believe that Plaintiffs', their members', or their staffs' communications contain or pertain to foreign intelligence information or relate to an investigation to obtain foreign intelligence information.

75.     Defendants, and each of them, have authorized, approved, supervised, performed, caused, participated in, aided, abetted, counseled, commanded, induced, procured, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the Associational Tracking Program and in the search or use of the telephone communications information of Plaintiffs, their members, and their staff. Defendants have committed these acts willfully, knowingly, and intentionally. Defendants continue to commit these acts and will continue to do so absent an order of this Court enjoining and restraining them from doing so.

FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

76.    Each and every Plaintiff is informed and believes that its associational activities have been harmed since the existence of the Associational Tracking Program became publicly known. Each Plaintiff has experienced a decrease in communications from members and constituents who had desired the fact of their communication to Plaintiff to remain secret, especially from the government and its various agencies, or has heard employees, members or associates express concerns about the confidentiality of the fact of their communications with Plaintiffs. Those Plaintiffs who operate hotlines have observed a decrease in calls to the hotlines and/or an increase in callers expressing concern about the confidentiality of the fact of their communications. Since the disclosure of the Associational Tracking Program, Plaintiffs have lost the ability to assure their members and constituents, as well as all others who seek to communicate with them, that the fact of their communications to Plaintiffs will be kept confidential, especially from the federal government, including its various agencies. This injury stems not from the disclosure of the Associational Tracking Program, but from the existence and operation of the program itself. Before the public disclosure of the program, Plaintiffs' assurances of confidentiality were illusory.

77.    For instance, these specific Plaintiffs experienced the following:

(a)    Plaintiff First Unitarian has a proud history of working for justice and protecting people in jeopardy for expressing their political views. In the 1950s, it resisted the McCarthy hysteria and supported blacklisted Hollywood writers and actors, and fought California's 'loyalty oaths' all the way to the Supreme Court. And in the 1980s, it gave sanctuary to refugees from civil wars in Central America. The principles of its faith often require the church to take bold stands on controversial issues. Church members and neighbors who come to the church for help should not fear that their participation in the church might have consequences for themselves or their families. This spying makes people afraid to belong to the church community.

(b)    Plaintiff Calguns Foundation runs a hotline for that allows the general public to call to ask questions about California's byzantine firearms laws. It has members who would be very worried about having their calls taped and stored by NSA/FBI when they're enquiring about

whether firearms and parts they possess are felonious in California. It has a phone number

specifically so people or their loved ones can call from jail becaues Californians are often arrested

for actually innocent possession oruse of firearms.

(c)     Plaintiff NLG notes that much of its work involves cases (some high profile)

involving individuals who have been charged with aiding terrorism or who have been monitored by

the FBI and Joint Terrorism Task Forces for their political activism. Knowledge that its email and

telephonic communications may likely be monitored has resulted in  restricting what its employees

and members  say over the telephone and in email about legal advocacy and work related to NLG

litigation or legal defense committees. In several instances, it has had to convene in-person meetings

to discuss sensitive matters. One example is its "Green Scare" hotline for individuals contacted by

the FBI, either as targets or in relation to environmental or animal rights cases. NLG immediately

advises Hotline callers that the line may not be secure, asks limited information before referring

callers to specific NLG attorneys in their geographic area, and does not keep notes or records of the

calls. One foundation funder asks for records of Hotline calls, but in response the NLG can only send

general examples of the types of calls it receives.

(d)     Plaintiff Human Rights Watch conducts research and advocacy such that its

effectiveness and credibility depend heavily on being able to interview those with direct knowledge

of human rights abuses, be they victims, witnesses, perpetrators, or knowledgeable bystanders such

as government officials, humanitarian agencies, lawyers and other civil society partners. Because

this type of research and reporting can endanger people and organizations, our stakeholders—

including even our researchers and/or consultants--often require us to keep their identities or other

identifying information confidential.   HRW has staff in these offices who talk to the above-

mentioned types of stakeholders by telephone to conduct research.  HRW is  concerned that many of

these stakeholders will have heightened concerns about contacting us through our offices now that

we are aware the NSA is logging metadata of these calls. This impairs HRW's research ability

and/or causes HRW to rely more on face-to-face encounters or other costly means of holding secure

conversations.

(e)     Plaintiff Shalom Center's Executive Director, Rabbi Arthur Waskow, was subjected to COINTELPRO activity (warrantless searches, theft, forgery) by the FBI between 1968 and 1974. He took part in a suit against the FBI and the Washington DC police (*Hobson v. Wilson*) for deprivation of the "right of the people peaceably to assemble." Rabbi Waskow won in DC Federal District Court and the part of the suit that focused on the FBI was upheld in the DC Circuit Court of Appeals. The result of this experience is that he has been very troubled and frightened by the revelations of warrantless mass searches of telephone and Internet communications by the NSA. For several weeks, as the revelations continued, Rabbi Waskow realized the likelihood that the organization he leads, the Shalom Center, and he were under illegitimate surveillance and — because of its involvement in legal and nonviolent opposition to US government policy in several fields — possibly worse. This realization made him rethink whether he wanted to continue in sharp prophetic criticism and action in regard to disastrous public policies. Rabbi Waskow had trouble sleeping, delayed some essays and blogs he had been considering, and worried whether his actions might make trouble for nonpolitical relatives. Rabbi Waskow certainly felt a chill fall across his work of peaceable assembly, association, petition, and the free exercise of his religious convictions.

## COUNT I

### Violation of First Amendment—Declaratory, Injunctive, and Other Equitable Relief
### (Against All Defendants)

78.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

79.     Plaintiffs, their members, and their staffs use telephone calls to communicate and to associate within their organization, with their members and with others, including to communicate anonymously and to associate privately.

80.     By their acts alleged herein, Defendants have violated and are violating the First Amendment free speech and free association rights of Plaintiffs, their members, and their staffs, including the right to communicate anonymously, the right to associate privately, and the right to engage in political advocacy free from government interference.

81.     By their acts alleged herein, Defendants have chilled and/or threaten to chill

the legal associations and speech of Plaintiffs, their members, and their staffs by, among other things, compelling the disclosure of their political and other associations, and eliminating Plaintiffs' ability to assure members and constituents that the fact of their communications with them will be kept confidential.

82.      Defendants are irreparably harming Plaintiffs, their members, and their staffs by violating their First Amendment rights. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

83.      Plaintiffs seek that this Court declare that Defendants have violated the First Amendment rights of Plaintiffs, their members, and their staffs; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the First Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

## COUNT II

### Violation of Fourth Amendment—Declaratory, Injunctive, and Equitable Relief (Against All Defendants)

84.      Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 66 of this complaint, as if set forth fully herein.

85.      Plaintiffs have a reasonable expectation of privacy in their telephone communications, including in their telephone communications information.

86.      By the acts alleged herein, Defendants have violated Plaintiffs' reasonable expectations of privacy and denied Plaintiffs their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States, including, but not limited to, obtaining *per se* unreasonable general warrants. Defendants have further violated Plaintiffs' rights by failing to apply to a court for, and for a court to issue, a warrant prior to any search and seizure as guaranteed by the Fourth Amendment.

87.      Defendants are now engaging in and will continue to engage in the above-described violations of Plaintiffs' constitutional rights, and   are  thereby  irreparably  harming  Plaintiffs.

19

Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

88.    Plaintiffs seek that this Court declare that Defendants have violated their Fourth Amendment rights; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiffs' rights under the Fourth Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

## COUNT III

**Violation of Fifth Amendment—Declaratory, Injunctive, and Equitable Relief**
**(Against All Defendants)**

89.    Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 66 of this complaint, as if set forth fully herein.

90.    Plaintiffs, their members, and their staffs have an informational privacy interest in their telephone communications information, which reveals sensitive information about their personal, political, and religious activities and which Plaintiffs do not ordinarily disclose to the public or the government. This privacy interest is protected by state and federal laws relating to privacy of communications records and the substantive and procedural right to due process guaranteed by the Fifth Amendment.

91.    Defendants through their Associational Tracking Program secretly seize, collect, acquire, retain, search, and use the bulk telephone communications information of Plaintiffs, their members, and their staff without providing notice to them, or process by which they could seek redress. Defendants provide no process adequate to protect their interests.

92.    Defendants seize, collect, acquire, retain, search, and use the bulk telephone communications information of Plaintiffs, their members, and their staff without making any showing of any individualized suspicion, probable cause, or other governmental interest sufficient or narrowly tailored to justify the invasion of Plaintiffs' due process right to informational privacy.

93.    Defendants seize, and acquire the   bulk telephone communications information of

20

Plaintiffs, their members, and their staff under, *inter alia*, section 215 of the USA-PATRIOT Act (50 U.S.C. § 1861).

94.     On information and belief, Defendants' information seizure, collection and acquisition activities rely on a secret legal interpretation of 50 U.S.C. § 1861 under which bulk telephone communications information of persons generally is as a matter of law deemed a "tangible thing" "relevant" to "an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities," even without any particular reason to believe that telephone communications information is a "tangible thing" or that the telephone communications information of any particular person, including Plaintiffs, their members, and their staff, is relevant to an investigation to obtain foreign intelligence information not concerning a U.S. person or to protect against international terrorism or clandestine intelligence activities.

95.     This legal interpretation of 50 U.S.C. § 1861 is not available to the general public, including Plaintiffs, their members, and their staff, leaving them and all other persons uncertain about where a reasonable expectation of privacy from government intrusion begins and ends and specifically what conduct may subject them to electronic surveillance.

96.     This secret legal interpretation of 50 U.S.C. § 1861, together with provisions of the FISA statutory scheme that insulate legal interpretations from public disclosure and adversarial process, fails to establish minimal guidelines to govern law enforcement and/or intelligence seizure and collection.

97.     The secret legal interpretation of 50 U.S.C. § 1861 used in the Associational Tracking Program and related surveillance programs causes section 1861 to be unconstitutionally vague in violation of the Fifth Amendment and the rule of law. The statute on its face gives no notice that it could be construed to authorize the bulk seizure and collection of telephone communications information for use in future investigations that do not yet exist.

98.     By these and the other acts alleged herein, Defendants have violated and are continuing to violate the right to due process under the Fifth Amendment of Plaintiffs, their

members, and their staff.

99.    By the acts alleged herein, Defendants' conduct proximately caused harm to Plaintiffs.

100.    On information and belief, Defendants are now engaging in and will continue to engage in the above-described violations of Plaintiffs' constitutional rights, and are thereby irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

101.    Plaintiffs seek that this Court declare that Defendants have violated their due process rights under the Fifth Amendment to the United States Constitution; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating the Plaintiffs' due process rights; and award such other and further equitable relief as is proper.

## COUNT IV

### Violation of 50 U.S.C. § 1861—Declaratory, Injunctive and Other Equitable Relief (Against All Defendants)

102.    Plaintiffs repeat and incorporate herein by reference the allegations in paragraph 1 through 66 of this complaint, as if set forth fully herein.

103.    The business records order provision set forth in 50 U.S.C. § 1861 limits Defendants' ability to seek telephone communications information. It does not permit the suspicionless bulk seizure and collection of telephone communications information unconnected to any ongoing investigation. It does not permit an order requiring the production of intangible things, including telephone communications information not yet in existence.

104.    Defendants' Associational Tracking Program and the seizure, collection, acquisition, retention, searching, and use of the telephone communications records of Plaintiffs, their members, and their staff exceed the conduct that may be lawfully authorized by an order issued under 50 U.S.C § 1861.

105.    By the acts alleged herein, Defendants are acting in excess of their statutory authority and in violation of the express statutory limitations and procedures Congress has imposed on them in 50 U.S.C. § 1861.

106.     Sovereign immunity for this claim is waived by 5 U.S.C. § 702.

107.     Defendants are now engaging in and will continue to engage in the above-described acts in excess of Defendants' statutory authority and in violation of statutory limitations and procedures of 50 U.S.C. § 1861 and are thereby irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

108.     Plaintiffs seek that this Court declare that Defendants have acted in excess of Defendants' statutory authority and in violation of statutory limitations and procedures of 50 U.S.C. § 1861; declare that Defendants have thereby irreparably harmed and will continue to irreparably harm Plaintiffs; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from acting in excess of Defendants' statutory authority and in violation of statutory limitations and procedures of 50 U.S.C. § 1861; and award such other and further equitable relief as is proper.

## COUNT V

### Motion For Return Of Unlawfully Searched And Seized Property Pursuant To Federal Rule of Criminal Procedure 41(g)

109.     Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 97 of this complaint, as if set forth fully herein.

110.     This Court has civil equitable jurisdiction under Federal Rule of Criminal Procedure 41(g) to order the return of illegally searched and seized property.

111.     Defendants, by their Associational Tracking Program and their bulk seizure, collection, acquisition, retention, searching, and use of the telephone communications information of Plaintiffs, have unlawfully searched and seized Plaintiffs' telephone communications information. Plaintiffs are aggrieved by Defendants unlawful seizure and search of their telephone communications information.

112.     Plaintiffs seek an order directing the return of their telephone communications information in the possession, custody, or control of Defendants, their agents, successors, and assigns, and all those in active concert and   participation with them.

23

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Declare that the Program as alleged herein violates without limitation Plaintiffs' rights under the First, Fourth, and Fifth Amendments to the Constitution; and their statutory rights;

2.     Award to Plaintiffs equitable relief, including without limitation, a preliminary and permanent injunction pursuant to the First, Fourth, and Fifth Amendments to the United States Constitution prohibiting Defendants' continued use of the Program, and a preliminary and permanent injunction pursuant to the First, Fourth, and Fifth Amendments requiring Defendants to provide to Plaintiffs an inventory of their communications, records, or other information that was seized in violation of the First, Fourth, and Fifth Amendments, and further requiring the destruction of all copies of those communications, records, or other information within the possession, custody, or control of Defendants.

3.     Award to Plaintiffs reasonable attorneys' fees and other costs of suit to the extent permitted by law.

4.     Order the return and destruction of their telephone communications information in the possession, custody, or control of Defendants, their agents, successors, and assigns, and all those in active concert and participation with them.

5.     Grant such other and further relief as the Court deems just and proper.

DATED: September 10, 2013        Respectfully submitted,

                       _/s/ Cindy Cohn_
                       CINDY COHN
                       LEE TIEN
                       KURT OPSAHL
                       MATTHEW ZIMMERMAN
                       MARK RUMOLD
                       DAVID GREENE
                       JAMES S. TYRE
                       ELECTRONIC FRONTIER FOUNDATION

RICHARD R. WIEBE
LAW OFFICE OF RICHARD R. WIEBE

THOMAS E. MOORE III
THE MOORE LAW GROUP

RACHAEL E. MENY
MICHAEL S. KWUN
BENJAMIN W. BERKOWITZ
KEKER & VAN NEST, LLP

ARAM ANTARAMIAN
LAW OFFICE OF ARAM ANTARAMIAN

Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT
CASE NO. 13-cv-3287 JSW

# JURY DEMAND

Plaintiffs hereby request a jury trial for all issues triable by jury including, but not limited to,

those issues and claims set forth in any amended complaint or consolidated action.

DATED:  September 10, 2013                Respectfully submitted,

  /s/ Cindy Cohn
                                       CINDY COHN
                                       LEE TIEN
KURT OPSAHL
                                       MATTHEW ZIMMERMAN
                                       MARK RUMOLD
DAVID GREENE
                                       JAMES S. TYRE
ELECTRONIC FRONTIER FOUNDATION

RICHARD R. WIEBE
                                       LAW OFFICE OF RICHARD R. WIEBE

THOMAS E. MOORE III
                                       THE MOORE LAW GROUP
                                       RACHAEL E. MENY
MICHAEL S. KWUN
                                       BENJAMIN W. BERKOWITZ
KEKER & VAN NEST, LLP

ARAM ANTARAMIAN
                                       LAW OFFICE OF ARAM ANTARAMIAN
                                       Attorneys for Plaintiffs