| | |
|---|---|
| CINDY COHN (SBN 145997) | RACHAEL E. MENY (SBN 178514) |
| cindy@eff.org | rmeny@kvn.com |
| LEE TIEN (SBN 148216) | MICHAEL S. KWUN (SBN 198945) |
| KURT OPSAHL (SBN 191303) | BENJAMIN W. BERKOWITZ (SBN 244441) |
| MATTHEW ZIMMERMAN (SBN 212423) | KEKER & VAN NEST, LLP |
| MARK RUMOLD (SBN 279060) | 633 Battery Street |
| DAVID GREENE (SBN 160107) | San Francisco, California 94111 |
| JAMES S. TYRE (SBN 083117) | Tel.: (415) 391-5400; Fax: (415) 397-7188 |
| ELECTRONIC FRONTIER FOUNDATION | |
| 815 Eddy Street | RICHARD R. WIEBE (SBN 121156) |
| San Francisco, CA 94109 | wiebe@pacbell.net |
| Tel.: (415) 436-9333; Fax: (415) 436-9993 | LAW OFFICE OF RICHARD R. WIEBE |
| | One California Street, Suite 900 |
| THOMAS E. MOORE III (SBN 115107) | San Francisco, CA 94111 |
| tmoore@rroyselaw.com | Tel.: (415) 433-3200; Fax: (415) 433-6382 |
| ROYSE LAW FIRM, PC | |
| 1717 Embarcadero Road | ARAM ANTARAMIAN (SBN 239070) |
| Palo Alto, CA 94303 | aram@eff.org |
| Tel.: 650-813-9700; Fax: 650-813-9777 | LAW OFFICE OF ARAM ANTARAMIAN |
| | 1714 Blake Street |
| Attorneys for Plaintiffs | Berkeley, CA 94703 |
| | Telephone: (510) 289-1626 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FIRST UNITARIAN CHURCH OF LOS ANGELES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al*.,<br><br>Defendants. | Case No: 3:13-cv-03287 JSW<br><br>**DECLARATION OF SHAHID BUTTAR ON BEHALF OF THE BILL OF RIGHTS DEFENSE COMMITTEE IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 7, 2014<br>Time: 9:00 A.M.<br>Hon. Jeffrey S. White<br>Courtroom 11 - 19th Floor |

I, SHADID BUTTAR, hereby declare:

1. I am the Executive Director of The Bill Of Rights Defense Committee. The facts contained in the following affidavit are the products of my own personal knowledge and if called upon to testify, I can and will competently do so.

2. Our organization builds grassroots coalitions at the local, statewide and national levels for the purpose of advancing the civil liberties guaranteed under the Bill of Rights.

3. Until 2013, we were a telecommunications customer of Verizon.

4. The collection of our phone records by the government has resulted in (1) harassment, withdrawal of constituent partners, and/or the suppression of engagement by new constituent partners out of fear that their association with an organization like the Bill of Rights Defense Committee that advocates for individual civil liberties will expose them to governmental scrutiny, and (2) other consequences which include, but are not limited to, an objective impact on, or 'chilling' of, the members' associational rights, the narrowing of speech by members in civil discourse, the suppression of member's civic participation in demonstrations protected by the First Amendment, the cancelation of receipt of informational literature such as email listservs and physical mailings and the muting and/or suppression of the scope and quality of political speech to such an extent that it occurs in the capacity that the member remains connected with the organization.

4. The Associational Tracking Program activities have harmed us because they have diminished our member engagement. Prior to the disclosures, our supporters were generally eager to engage in activism promoting individual civil liberties. Following the disclosures, many individuals have expressed to us a declining willingness to engage grassroots organizing out of concern that it will make them a target of government harassment. This has caused them to become less involved in our work where they otherwise would have maintained their involvement. Our organization's programs and funding have both suffered as a result.

5. Since the disclosure of the Associational Tracking Program, we have lost the ability to assure our members and constituents, as well as all others who seek to communicate with us, that

the fact of their communications to and with us will be kept confidential.

6. Since the disclosure, it has become clear that our previous assurances of confidentiality to our supporters were in fact not true.

7. As a result, we can no longer promise our supporters that we will treat their communications as confidential. Because the NSA's secret activities have been revealed only in part, and because the government has not fully described the extent of the surveillance, we cannot be sure that alternative modes of communication will be confidential.

8. Specifically, we have experienced the following:

(a) A supporter of the Bill Of Rights Defense Committee who currently lives in Washington, D.C. and works as an artist has confirmed that NSA data collection chilled his personal willingness to engage in political speech and activism. This person's fears are based on prior incidents, rather than conjecture: he has previously endured police violence and misconduct in the context of prior restraints on First Amendment activity, for which he has been awarded a favorable court judgment.

(b) Across our network are thousands of grassroots activists who have proactively challenged government spying in a variety of capacities, including by organizing marches, rallies, protests, and other grassroots coalition activities. Each of these supporters has reasons to be particularly concerned about NSA spying, and several have indicated feeling personally intimidated by the prospect of government agencies monitoring their correspondence and telecommunications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October __, 2013 at Washington, DC.

_____
SHADID BUTTAR

the fact of their communications to and with us will be kept confidential.

6. Since the disclosure, it has become clear that our previous assurances of confidentiality to our supporters were in fact not true.

7. As a result, we can no longer promise our supporters that we will treat their communications as confidential. Because the NSA's secret activities have been revealed only in part, and because the government has not fully described the extent of the surveillance, we cannot be sure that alternative modes of communication will be confidential.

8. Specifically, we have experienced the following:

(a) A supporter of the Bill of Rights Defense Committee who currently lives in Washington, D.C. and works as an artist has confirmed that NSA data collection chilled his personal willingness to engage in political speech and activism. This person's fears are based on prior incidents, rather than conjecture: he has previously endured police violence and misconduct in the context of prior restraints on First Amendment activity, for which he has been awarded a favorable court judgment.

(b) Across our network are thousands of grassroots activists who have proactively challenged government spying in a variety of capacities, including by organizing marches, rallies, protests, and other grassroots coalition activities. Each of these supporters has reasons to be particularly concerned about NSA spying, and several have indicated feeling personally intimidated by the prospect of government agencies monitoring their correspondence and telecommunications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2013 in Washington, DC.

_____
SHAHID BUTTAR