CINDY COHN (SBN 145997)
cindy@eff.org
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
MATTHEW ZIMMERMAN (SBN 212423)
MARK RUMOLD (SBN 279060)
DAVID GREENE (SBN 160107)
JAMES S. TYRE (SBN 083117)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333; Fax: (415) 436-9993

THOMAS E. MOORE III (SBN 115107)
tmoore@rroyselaw.com
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, CA 94303
Tel.: 650-813-9700; Fax: 650-813-9777

Attorneys for Plaintiffs

RACHAEL E. MENY (SBN 178514)
rmeny@kvn.com
MICHAEL S. KWUN (SBN 198945)
BENJAMIN W. BERKOWITZ (SBN 244441)
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, California 94111
Tel.: (415) 391-5400; Fax: (415) 397-7188

RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Tel.: (415) 433-3200; Fax: (415) 433-6382

ARAM ANTARAMIAN (SBN 239070)
aram@eff.org
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 289-1626

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRST UNITARIAN CHURCH OF LOS ANGELES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al*.,<br><br>Defendants. | Case No: 3:13-cv-03287 JSW<br><br>**DECLARATION OF KAY GUINANE FOR CHARITY & SECURITY NETWORK IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>Date: February 7, 2014<br>Time: 9:00 A.M.<br>Hon. Jeffrey S. White<br>Courtroom 11 - 19th Floor |

DECLARATION OF KAY GUINANE FOR CHARITY & SECURITY NETWORK ISO PLAINTIFFS' MSJ

I, KAY GUINANE, hereby declare:

1. I am the Director of the Charity & Security Network. The facts contained in the following affidavit are known to me of my own personal knowledge and if called upon to testify, I could and would competently do so.

2. Our organization works to protect civil society's ability to carry out effective peacebuilding projects, humanitarian aid, development and other public benefit work in a manner consistent with human rights principles and democratic values. To accomplish this, the Charity & Security Network focuses on convening stakeholders and sponsoring dialog; raising awareness, dispelling myths and promoting a framework based on protecting the positive contribution civil society makes to human security; and coordinating advocacy by engaging the nonprofit sector with to support needed changes in national security rules.

3. The collection of our phone records by the government has resulted in other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.

4. I say this because: 1.) the issues we address are sensitive, involving the nexus of national security, human rights and humanitarian law. To do our work effectively we must be able to share information among members and between staff and membership. The Associational Tracking Program has inhibited our ability to share information as needed. 2.) One of our core functions is to facilitate dialog between civil society and government to address the problems humanitarian, peacebuilding, human rights defenders and others have in carrying out their missions due to overly broad national security rules. Our ability to plan, facilitate and develop strategy for such dialog has been inhibited by the knowledge that our communications information is collected and retained by the government.

5. We have experienced an increase in members expressing concern about the confidentiality of the fact of their communications, among each other and with staff. Because our members are located in many different places, it is necessary to use conference calls and email listservs for ongoing communications. This includes conducting meetings of our Advisory

1

DECLARATION OF KAY GUINANE FOR CHARITY & SECURITY
NETWORK ISO PLAINTIFFS' MSJ
CASE NO. 13-cv-3287 JSW

Board as well as topical working groups that collect and assess information and develop strategies. Some members have declined to discuss certain issues over the phone, making it necessary to plan in-person meetings that will incur extra time and travel costs. Other members have declined to hold some discussions by email.

6. Since the disclosure of the Associational Tracking Program, we have lost the ability to assure our members and constituents, as well as all others who seek to communicate with us, that the fact of their communications to and with us will be kept confidential. We have had to develop factual materials to share to explain the scope of the program and its impact on our operations.

7. We assumed that, we had confidentiality in our communications with us prior to the current revelations, but we've since learned that we did not actually have confidentiality.

8. Our concerns about lack of confidentiality have become more acute because of the government's ongoing refusal to give a clear answer about the extent to which organizations like ours are subject to surveillance.

9. We have been forced to expend time and resources on exploring new technologies that may protect the privacy of our communications, although we cannot be sure they will actual ensure confidentiality. Some activities are delayed until in-person meetings can be arranged. On an ongoing basis, the surveillance program inhibits the ability of staff and membership to communicate about sensitive factual and strategic issues. This hampers our ability to effectively carry out our work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October ___, 2013 at _____, _____.
                                                                                      [City]           [State]


_____
KAY GUINANE

2
DECLARATION OF KAY GUINANE FOR CHARITY & SECURITY
NETWORK ISO PLAINTIFFS' MSJ
CASE NO. 13-cv-3287 JSW

Board as well as topical working groups that collect and assess information and develop strategies. Some members have declined to discuss certain issues over the phone, making it necessary to plan in-person meetings that will incur extra time and travel costs. Other members have declined to hold some discussions by email.

6. Since the disclosure of the Associational Tracking Program, we have lost the ability to assure our members and constituents, as well as all others who seek to communicate with us, that the fact of their communications to and with us will be kept confidential. We have had to develop factual materials to share to explain the scope of the program and its impact on our operations.

7. We assumed that, we had confidentiality in our communications with us prior to the current revelations, but we've since learned that we did not actually have confidentiality.

8. Our concerns about lack of confidentiality have become more acute because of the government's ongoing refusal to give a clear answer about the extent to which organizations like ours are subject to surveillance.

9. We have been forced to expend time and resources on exploring new technologies that may protect the privacy of our communications, although we cannot be sure they will actual ensure confidentiality. Some activities are delayed until in-person meetings can be arranged. On an ongoing basis, the surveillance program inhibits the ability of staff and membership to communicate about sensitive factual and strategic issues. This hampers our ability to effectively carry out our work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 29, 2013 at Washington, DC.
[City]    [State]

_____
KAY GUINANE