| | |
|---|---|
| CINDY COHN (SBN 145997)<br>cindy@eff.org<br>LEE TIEN (SBN 148216)<br>KURT OPSAHL (SBN 191303)<br>MATTHEW ZIMMERMAN (SBN 212423)<br>MARK RUMOLD (SBN 279060)<br>DAVID GREENE (SBN 160107)<br>JAMES S. TYRE (SBN 083117)<br>ELECTRONIC FRONTIER FOUNDATION<br>815 Eddy Street<br>San Francisco, CA 94109<br>Tel.: (415) 436-9333; Fax: (415) 436-9993<br><br>THOMAS E. MOORE III (SBN 115107)<br>tmoore@rroyselaw.com<br>ROYSE LAW FIRM, PC<br>1717 Embarcadero Road<br>Palo Alto, CA 94303<br>Tel.: 650-813-9700; Fax: 650-813-9777<br><br>Attorneys for Plaintiffs | RACHAEL E. MENY (SBN 178514)<br>rmeny@kvn.com<br>MICHAEL S. KWUN (SBN 198945)<br>BENJAMIN W. BERKOWITZ (SBN 244441)<br>KEKER & VAN NEST, LLP<br>633 Battery Street<br>San Francisco, California 94111<br>Tel.: (415) 391-5400; Fax: (415) 397-7188<br><br>RICHARD R. WIEBE (SBN 121156)<br>wiebe@pacbell.net<br>LAW OFFICE OF RICHARD R. WIEBE<br>One California Street, Suite 900<br>San Francisco, CA 94111<br>Tel.: (415) 433-3200; Fax: (415) 433-6382<br><br>ARAM ANTARAMIAN (SBN 239070)<br>aram@eff.org<br>LAW OFFICE OF ARAM ANTARAMIAN<br>1714 Blake Street<br>Berkeley, CA 94703<br>Telephone: (510) 289-1626 |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRST UNITARIAN CHURCH OF LOS ANGELES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al*.,<br><br>Defendants. | Case No: 3:13-cv-03287 JSW<br><br>**DECLARATION OF DINAH POKEMPNER FOR HUMAN RIGHTS WATCH IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  February 7, 2014<br>Time:  9:00 A.M.<br>Hon. Jeffrey S. White<br>Courtroom 11 - 19th Floor |

DECLARATION OF DINAH POKEMPNER FOR HUMAN RIGHTS WATCH ISO PLAINTIFFS' MSJ

I, DINAH POKEMPNER, hereby declare:

1. I am the General Counsel of Human Rights Watch. The facts contained in the following affidavit are known to me of my own personal knowledge and if called upon to testify, I could and would competently do so.

2. Our organization conducts research and advocacy on human rights conditions around the globe, in conjunction with activists, civil society organizations, and victims of human rights violations in many countries (collectively, "our associates").

3. The collection of our phone records by the government has resulted in (1) intimidation, withdrawal, and/or discouragement of existing and new associates, and (2) other consequences which objectively suggest an impact on, or 'chilling' of, the associational rights of those who collaborate with us. I say this because of the following facts:

4. We conduct research and advocacy such that its effectiveness and credibility depend heavily on being able to interview those with direct knowledge of human rights abuses, be they victims, witnesses, perpetrators, or knowledgeable bystanders such as government officials, humanitarian agencies, lawyers and other civil society partners. Because this type of research and reporting can endanger people and organizations, our stakeholders—including even some of our researchers and/or consultants—often require us to keep their identities or other identifying information confidential. HRW has staff in these offices who talk to the above-mentioned types of stakeholders by telephone to conduct research. HRW believes that many of these stakeholders now have heightened concerns about contacting us through our offices now that we are aware the NSA is logging metadata of these calls. This impairs HRW's research ability and/or causes HRW to rely more on face-to-face encounters or other costly means of holding secure conversations.

5. One particular area where we work is with prisoners, illegal migrants and asylum-seekers, victims of torture and others who fear contact or revelation of their identities to the government. This includes victims in the United States. From past experience, we know that where these types of individuals are identified to authorities, they may suffer reprisal for being known to associate with or pass information to groups like Human Rights Watch. For example,

1

DECLARATION OF DINAH POKEMPNER FOR HUMAN RIGHTS
WATCH ISO PLAINTIFFS' MSJ
CASE NO. 13-cv-3287 JSW

some women prisoners in Michigan who reported sexual harassment to us by prison guards alleged they suffered retaliation. Michigan authorities subsequently sought, unsuccessfully, to discover the identities of yet other such women from us.

6. Because of this knowledge, to protect victims and witnesses from retaliation for associating with us, we have for some time mailed them materials in blank envelopes, rather than envelopes that bear our name and return address, and arranged our telephone service not to display the company and number when we make outside calls.

7. Whereas before we were fairly confident that telephone communications with our research and advocacy staff were secure and confidential, we now need to find other ways to reassure these types of informants and partners that their contact with us is secure and will not put them at risk of retaliation.

8. We have experienced an increase in questions from our researchers, other staff, external partners and potential associates expressing concern about the confidentiality of the fact of their communications with HRW itself and among our staff and associates. While it is difficult to get precise information about communications that did not occur, based on the concerns raised by others, I believe that some individuals may have refrained from reporting human rights abuses to us and some partners may have refrained from contacting us due to their concerns about security and confidentiality.

9. Our security team and Operations Department are studying new protocols and issuing frequent advice on the need to use caution to keep confidential communications secure, increasing their workload.

10. Since the disclosure of the Associational Tracking Program, we have lost the ability to assure our associates, sources and staff, as well as all others who seek to communicate with us, that the fact of their communications to and with us will be kept confidential. We also realized that the promises of confidentiality we made prior to the disclosures were probably not accurate and should not have been relied upon by our partners.

11. Moreover, the NSA's continued secrecy of the full range of its activities, and the

confusing messages they have sent about it over time, have left us unable to reassure our members and associates that additional forms of surveillance, as yet unconfirmed or actively denied by the government are not also occurring, leaving us with few options for alternative forms of confidential communication.

12. HRW's telephone service provider is Verizon Business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 31, 2013 at New York, New York.

DINAH POKEMPNER

---

3
DECLARATION OF DINAH POKEMPNER FOR HUMAN RIGHTS
WATCH ISO PLAINTIFFS' MSJ
CASE NO. 13-cv-3287 JSW