| | |
|---|---|
| CINDY COHN (SBN 145997)<br>cindy@eff.org<br>LEE TIEN (SBN 148216)<br>KURT OPSAHL (SBN 191303)<br>MATTHEW ZIMMERMAN (SBN 212423)<br>MARK RUMOLD (SBN 279060)<br>DAVID GREENE (SBN 160107)<br>JAMES S. TYRE (SBN 083117)<br>ELECTRONIC FRONTIER FOUNDATION<br>815 Eddy Street<br>San Francisco, CA 94109<br>Tel.: (415) 436-9333; Fax: (415) 436-9993<br><br>THOMAS E. MOORE III (SBN 115107)<br>tmoore@rroyselaw.com<br>ROYSE LAW FIRM, PC<br>1717 Embarcadero Road<br>Palo Alto, CA 94303<br>Tel.: 650-813-9700; Fax: 650-813-9777<br><br>Attorneys for Plaintiffs | RACHAEL E. MENY (SBN 178514)<br>rmeny@kvn.com<br>MICHAEL S. KWUN (SBN 198945)<br>BENJAMIN W. BERKOWITZ (SBN 244441)<br>KEKER & VAN NEST, LLP<br>633 Battery Street<br>San Francisco, California 94111<br>Tel.: (415) 391-5400; Fax: (415) 397-7188<br><br>RICHARD R. WIEBE (SBN 121156)<br>wiebe@pacbell.net<br>LAW OFFICE OF RICHARD R. WIEBE<br>One California Street, Suite 900<br>San Francisco, CA 94111<br>Tel.: (415) 433-3200; Fax: (415) 433-6382<br><br>ARAM ANTARAMIAN (SBN 239070)<br>aram@eff.org<br>LAW OFFICE OF ARAM ANTARAMIAN<br>1714 Blake Street<br>Berkeley, CA 94703<br>Telephone: (510) 289-1626 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FIRST UNITARIAN CHURCH OF LOS ANGELES, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITY AGENCY, *et al*.,<br><br>Defendants. | Case No: 3:13-cv-03287 JSW<br><br>**DECLARATION OF TRACY ROSENBERG FOR MEDIA ALLIANCE IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  February 7, 2014<br>Time:  9:00 A.M.<br>Hon. Jeffrey S. White<br>Courtroom 11 - 19th Floor |

I, TRACY ROSENBERG, hereby declare:

1. I am the Executive Director of Media Alliance. The facts contained in the following affidavit are known to me of my own personal knowledge and if called upon to testify, I could and would competently do so.

2. Our organization is a non-profit, membership organization based in Oakland, California. Media Alliance served as a resource and advocacy center for media workers, non-profit organizations, and social justice advocates to make media accessible, accountable, decentralized, representative of society's diversity, and free from covert or overt government control and corporate dominance. Media Alliance brings this action on behalf of itself and its adversely affected members and staff.

3. The collection of our phone records by the government has resulted in (1) harassment, membership withdrawal, and/or discouragement of new members, and (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.

4. I say this because of the following facts:

5. Media Alliance is a subscriber of AT&T for both wired and wireless telephone service.

6. Many of our members access resources we provide like classes that provide training in editing skills or public relations or they purchase regional press lists and how-to books or they subscribe to a job listing service. They may or may not agree with stances the organization takes on telecom policy and regulation, including specific actions by government officials, and have expressed concern to us that transactional activity within my organization may be surveilled and/or recorded by government agencies.

7. The Associational Tracking Program activities have harmed us because we have experienced a decrease in communications from members and constituents who had desired the fact of their communication to Media Alliance to remain secret.

8. Media Alliance regularly files comments with government agencies like the Federal Communications Commission and the Federal Trade Commission as well as participating in

regional, state and federal hearings on a variety of issues relating to the telecom and media policy and regulation. In addition, we provide training and resources to a variety of local not-for-profit organizations and individuals engaged in the practice of journalism and communications work. We have always assured our members that their privacy is guaranteed and the membership in our organization, which at times can be quite critical of the actions of governmental organizations in the telecom and media policy arena, would not endanger their relationships with governmental entities, including public funding for not-for-profit organizations, and the issuance of press passes for journalists just because we did not and do not disclose our membership roster nor our transactional customer lists to governmental agencies without the permission of the member involved. Recent revelations regarding phone metadata collection has rendered those assurances false and not permitted us to continue to state that policy. This has had and will continue to have a chilling effect on our membership rolls.

9. Specifically we have experienced the following:

Several organizational members have asked to have their membership terminated and their data expunged from our database after purchasing products or services (and purchasing memberships for the purpose of receiving discounted prices on those products or services in the wake of recent publicity about the extent of telephone metadata surveillance. Media Alliance has experienced a significant increase in the number of individuals expressing concern about the privacy of their inquiries and transactions with our organization, more than a doubling from any previous year. I have been in this position since 2007 and the increase is unprecedented. Moreover, we have had a large number of individuals go beyond expressing concern to request the end of their memberships.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October __, 2013 at Oakland, California.

_____
TRACY ROSENBERG

regional, state and federal hearings on a variety of issues relating to the telecom and media policy and regulation. In addition, we provide training and resources to a variety of local not-for-profit organizations and individuals engaged in the practice of journalism and communications work. We have always assured our members that their privacy is guaranteed and the membership in our organization, which at times can be quite critical of the actions of governmental organizations in the telecom and media policy arena, would not endanger their relationships with governmental entities, including public funding for not-for-profit organizations, and the issuance of press passes for journalists just because we did not and do not disclose our membership roster nor our transactional customer lists to governmental agencies without the permission of the member involved. Recent revelations regarding phone metadata collection has rendered those assurances false and not permitted us to continue to state that policy. This has had and will continue to have a chilling effect on our membership rolls.

9. Specifically we have experienced the following:

Several organizational members have asked to have their membership terminated and their data expunged from our database after purchasing products or services (and purchasing memberships for the purpose of receiving discounted prices on those products or services in the wake of recent publicity about the extent of telephone metadata surveillance. Media Alliance has experienced a significant increase in the number of individuals expressing concern about the privacy of their inquiries and transactions with our organization, more than a doubling from any previous year. I have been in this position since 2007 and the increase is unprecedented. Moreover, we have had a large number of individuals go beyond expressing concern to request the end of their memberships.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 28, 2013 at Oakland, California.



TRACY ROSENBERG