CINDY COHN (SBN 145997)
cindy@eff.org
LEE TIEN (SBN 148216)
KURT OPSAHL (SBN 191303)
MATTHEW ZIMMERMAN (SBN 212423)
MARK RUMOLD (SBN 279060)
DAVID GREENE (SBN 160107)
JAMES S. TYRE (SBN 083117)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333; Fax: (415) 436-9993

THOMAS E. MOORE III (SBN 115107)
tmoore@rroyselaw.com
ROYSE LAW FIRM, PC
1717 Embarcadero Road
Palo Alto, CA 94303
Tel.: 650-813-9700; Fax: 650-813-9777

Attorneys for Plaintiffs

RACHAEL E. MENY (SBN 178514)
rmeny@kvn.com
MICHAEL S. KWUN (SBN 198945)
BENJAMIN W. BERKOWITZ (SBN 244441)
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, California 94111
Tel.: (415) 391-5400; Fax: (415) 397-7188

RICHARD R. WIEBE (SBN 121156)
wiebe@pacbell.net
LAW OFFICE OF RICHARD R. WIEBE
One California Street, Suite 900
San Francisco, CA 94111
Tel.: (415) 433-3200; Fax: (415) 433-6382

ARAM ANTARAMIAN (SBN 239070)
aram@eff.org
LAW OFFICE OF ARAM ANTARAMIAN
1714 Blake Street
Berkeley, CA 94703
Telephone: (510) 289-1626

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

FIRST UNITARIAN CHURCH OF LOS ANGELES, *et al.*

Plaintiffs,

v.

NATIONAL SECURITY AGENCY, *et al.*,

Defendants.

Case No: 3:13-cv-03287 JSW

**DECLARATION OF DEBORAH C. PEEL, MD, FOR PATIENT PRIVACY RIGHTS FOUNDATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: February 7, 2014
Time: 9:00 A.M.
Hon. Jeffrey S. White
Courtroom 11 - 19th Floor

I, DEBORAH C. PEEL, MD, hereby declare:

1. I am the Founder and Chair of Patient Privacy Rights ("PPR"), a 501(c)(3) non-profit foundation. The facts contained in the following affidavit are known to me of my own personal knowledge and if called upon to testify, I could and would competently do so.

2. As a national health privacy advocacy organization, Patient Privacy Rights Foundation educates the public about the elimination of health privacy and advocates for effective privacy-protective laws and technical solutions that will restore trust in the patient-physician relationship and electronic health systems, so patients will be willing to share sensitive health information with physicians and other health professionals, and use electronic systems and data exchanges.

3. The collection of our phone records by the government has (1) discouraged new members, constituents, media, whistleblowers, and consumers from calling our office phone line to seek information, help, and advice when their sensitive health information has been used or disclosed; or discussing sensitive legal actions concerning corporate, state or federal government violations of privacy; and (2) discouraged phone conversations with experts from other advocacy organizations about collaborative efforts to hold industry or government accountable for privacy health privacy violations, or to plan legal interventions at the state or federal level. The lack of private phone calls has diminished the willingness of consumers, the media, members, and whistleblowers to call PPR, creating a 'chilling' effect on key consumer services PPR offers, on users' and members' associational rights, on whistleblowers willingness to speak, and on collaborative advocacy efforts with other privacy and consumer organizations and experts and actions such as lawsuits and campaigns to protect citizens' rights to health information privacy.

4. I say this because of the following facts:

Patient Privacy Rights' office line has been a key resource for consumers, members, the media, and whistleblowers since 2006. Although our website offers resources and information, phone calls are essential for discussion of sensitive matters concerning hidden use, disclosure, and sale of the nation's personal health information. PPR is a subscriber of Time Warner.

5. The Associational Tracking Program activities have harmed PPR because we have experienced a decrease in communications from whistleblowers, members and users who would have requested that their communications with Plaintiff remain secret.

6. PPR experienced a decrease in calls to our office phone line during the summer. For example, prior to the revelations of NSA tracking, we received on average 40 calls per month. After the NSA revelations became public, we received on average only 20 calls per month.

7. The NSA revelations have caused heightened attention to health data security breaches and requests for help and resources to deal with breaches, but nevertheless have resulted in a decrease in whistleblower calls. Since September, more people have expressed concerns to us about health information security breaches.

8. Since the disclosure of the Associational Tracking Program, we can no longer assure our members and constituents, as well as all others who seek to communicate with us, that their communications to and with us can be kept confidential.

9. We make strong assurances of confidentiality of information shared with PPR in our privacy policy, but clearly in light of NSA tracking, those assurances were false.

10. Moreover, the pattern of distortion and lawless conduct by the NSA, exacerbated by the intense secrecy of its activities, have left us unable to reassure our members and the public that additional forms of surveillance, as yet unconfirmed or actively denied by the government are not also occurring, leaving us with no alternative forms of confidential communication.

11. Patient Privacy Rights works to protect the public's fundamental Constitutional, state and federal rights to health information privacy. We work to inform the public about how the healthcare industry and government violate patients' rights to health information privacy. We offer technical and legal solutions to enable the benefits of technology while eliminating current technology-caused harm from hidden health data surveillance, collection, disclosure, sale, and misuse. 40-50 million patients per year delay or avoid essential treatment or hide information to try and protect the privacy of their health data because they know health data is used to damage reputations, jobs, credit, and more. The lack of health information privacy causes bad health

outcomes. At the same time, patients cannot obtain electronic copies of health data or obtain a 'chain of custody' to track the hidden flows of their health information. *See* theDataMap.org[1], a project PPR supports to map the hidden flows of health data inside and outside the US. As the nation's leading health privacy advocacy organization, PPR has over 20,000 members in all 50 states. PPR leads the bipartisan Coalition for Patient Privacy, representing 10.3 million US citizens who want to control the use of personal health data in electronic systems. In 2007-2008, PPR led development of the PPR Trust Framework, 75+ auditable criteria[2] to measure how effectively technology systems protect data privacy. The Framework can be used for research about privacy and to certify health IT systems. Since 2011, PPR has convened the 'International Summits on the Future of Health Privacy',[3] co-hosted by Georgetown Law Center. In 2012, PPR proposed a 5-year plan to move the US health IT system from institutional to patient control over health data in *Information Privacy in the Evolving Healthcare Environment.*[4] As a privacy organization, PPR tries to hold itself to the highest privacy standards and practices. PPR promised users and members that any information shared with PPR would remain private. Our online privacy policy states, "We do not share, sell, rent, or lease your email address or any personal information. EVER." The revelations that the NSA collects and stores all phone calls and metadata violates PPR's members' and users' expectations that their phone conversations with our staff were private and would not be disclosed.

///

///

///

///

---

[1] theDataMap.org

[2] http:/patientprivacyrights.org/wp-content/uploads/2013/04/%C2%A9-2010-to-2013-PPRs-Trust-Framework-Brief-Summary-and-Auditable-Critera.pdf

[3] http://www.healthprivacy summitl.org/events/2013-health-privacy-summit/event-summary-1bfa9be80d364092aeed1a8803377fa8.aspx.

[4] http://ebooks.himss.org/product/information-privacy-in-evolving-healthcare-environment44808.

12. Specifically, the key consequenses of NSA surveillance on the public and Plaintiff's members are:

a. Phone and email surveillance has made whistleblowers afraid to report government and industry health privacy violations to PPR because all calls, metadata, and emails are being collected and stored by NSA.

b. Knowledge that telephonic communications are monitored has forced our employees and members to restrict what they say over the telephone about privacy violations, legal advocacy, and work related to litigation or legal defense committees.

c. NSA surveillance forces us to convene in-person meetings to discuss sensitive matters. This is very difficult for PPR because our office is in Austin, Texas and we serve the entire country. PPR must rely more on more time-consuming and costly face-to-face meetings or attempt to find and purchase technology so we can hold private conversations.

d. PPR must revise its privacy policy.

e. PPR must advise callers that phone calls and metadata are not secure, ask for limited information and ensure timely deletion of any notes of the calls.

f. PPR's effectiveness and credibility depend on being able to interview people with direct knowledge of violations of health information privacy rights, including victims, witnesses, perpetrators, whistleblowers, or knowledgeable bystanders such as government officials or industry employees, other advocacy organizations, and lawyers and other civil society partners. PPR is concerned that many of these parties will fear contacting our office knowing that the NSA logs all calls and metadata.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October __, 2013 at Austin, Texas.

______________________________
DEBORAH C. PEEL MD

12. Specifically, the key consequenses of NSA surveillance on the public and Plaintiff's members are:

a. Phone and email surveillance has made whistleblowers afraid to report government and industry health privacy violations to PPR because all calls, metadata, and emails are being collected and stored by NSA.

b. Knowledge that telephonic communications are monitored has forced our employees and members to restrict what they say over the telephone about privacy violations, legal advocacy, and work related to litigation or legal defense committees.

c. NSA surveillance forces us to convene in-person meetings to discuss sensitive matters. This is very difficult for PPR because our office is in Austin, Texas and we serve the entire country. PPR must rely more on more time-consuming and costly face-to-face meetings or attempt to find and purchase technology so we can hold private conversations.

d. PPR must revise its privacy policy.

e. PPR must advise callers that phone calls and metadata are not secure, ask for limited information and ensure timely deletion of any notes of the calls.

f. PPR's effectiveness and credibility depend on being able to interview people with direct knowledge of violations of health information privacy rights, including victims, witnesses, perpetrators, whistleblowers, or knowledgeable bystanders such as government officials or industry employees, other advocacy organizations, and lawyers and other civil society partners. PPR is concerned that many of these parties will fear contacting our office knowing that the NSA logs all calls and metadata.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 29, 2013, at Austin, Texas.

DEBORAH C. PEEL MD